*In re* MARRIAGE OF CARMEN JAMES MORREALE, Petitioner-Appellant, and MARY ELLEN MORREALE, n/k/a Mary Ellen Schumann, Respondent-Appellee.

Second District  No. 2—03—0470

Opinion filed July 16, 2004.

Howard W. Broecker, Timothy B. Newitt, and Markus May, of Johnson, Westra, Broecker, Whittaker & Newitt, P.C., of Carol Stream, for appellant.

Roger C. Nelson, Jr., of Nelson Law Offices, P.C., of Wheaton, for appellee.

JUSTICE BOWMAN delivered the opinion of the court:

The marriage of petitioner, Carmen James Morreale, and respondent, Mary Ellen Morreale, n/k/a Mary Ellen Schumann, was dissolved on April 6, 1995. The dissolution judgment incorporated the parties' marital settlement agreement. On September 4, 2002, Carmen petitioned for postjudgment relief. He alleged that, contrary to the agreement, Mary Ellen had failed to report maintenance payments as income on her 2000 tax return, resulting in a $10,000 assessment against him for taxes and penalties. Mary Ellen moved to dismiss the case, and the trial court granted the motion. On appeal, Carmen argues that the trial court failed to address all of the issues raised in his petition and erred by granting the motion. We affirm.

The marital settlement agreement states in relevant part:

"6. *LUMP SUM SETTLEMENT IN LIEU OF PROPERTY*

CARMEN agrees to pay to MARY ELLEN and MARY ELLEN agrees to accept as and for a lump sum settlement in lieu of property the sum of $140,011.00 payable in 72 equal installments of $1[,]945.00 commencing with the first day of the month following the sale and closing of the marital residence. *** The payments hereunder shall be terminable only in the event of the death of MARY ELLEN. In such event, any balance due and owing will be paid into a trust to be established by MARY ELLEN for the benefit of the parties' children. All payments contemplated under this paragraph shall be deductible by CARMEN and taxable to MARY ELLEN on their respective income tax returns pursuant to the applicable provisions of the Internal Revenue Code. ***

7. *WAIVER OF MAINTENANCE*

Except as otherwise provided for in Paragraph 6 hereinabove, both parties hereby waive all rights to support and maintenance

from each other, past, present, and future. Any Judgment for Dissolution of Marriage entered herein shall contain a provision barring each of the parties hereto from claiming any rights to support or maintenance.

### 8. *DISTRIBUTION OF MARITAL PROPERTY*
* * *

*** The parties agree that CARMEN shall retain all of his interest in Benefit Systems & Services Inc. with a stipulated value of $343,000 free and clear of any interest on the part of MARY ELLEN, except as otherwise provided for in Paragraph 6 hereof."

At the prove up for the dissolution proceeding, the trial court asked Mary Ellen if she understood that "maintenance [would] be as provided in the marital settlement agreement." Mary Ellen answered in the affirmative. Mary Ellen's attorney stated that the "maintenance provision" was in paragraph six of the agreement and provided for $1,945 per month for 72 months.

In his postjudgment motion, Carmen alleged the following. The payments outlined in paragraph six of the settlement agreement were for the support and maintenance of Mary Ellen and the parties' minor children. Contrary to the agreement, Mary Ellen failed to report the payments as income on her 2000 income tax return. Therefore, the Internal Revenue Service (IRS) assessed taxes and penalties of $10,000 against Carmen. Because the agreements and subsequent orders "inadvertently" failed to state that the payments would terminate upon Mary Ellen's death, the IRS made a preliminary finding that the payments were not deductible by Carmen or taxable to Mary Ellen. Carmen requested that the trial court provide relief by: (1) amending the dissolution judgment *nunc pro tunc* to state that the payments will terminate upon Mary Ellen's death; (2) ordering Mary Ellen to "reimburse" Carmen for the taxes she avoided by not including the payments in her state and federal income tax returns; or (3) issuing a rule requiring Mary Ellen to show cause why she should not be held in contempt of court for failing to comply with the dissolution judgment. Carmen additionally sought attorney fees.

Mary Ellen moved to dismiss the case under section 2—619 of the Code of Civil Procedure (Code) (735 ILCS 5/2—619 (West 2002)). She argued that Carmen was seeking to modify the judgment under section 2—1401 of the Code (735 ILCS 5/2—1401 (West 2002)) but was barred by the statute's two-year limitations period. The trial court granted the motion, and Carmen timely appealed. We review *de novo* an appeal from a section 2—619 dismissal. We must determine whether a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether the dismissal is proper as a

matter of law. *Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248, 254 (2004). However, we may affirm the trial court's decision on any basis supported by the record, regardless of the reasoning employed by the trial court. *Scassifero v. Glaser*, 333 Ill. App. 3d 846, 860 (2002).

■ We first address whether the trial court erred in dismissing Carmen's first claim, that the dissolution judgment should be amended *nunc pro tunc* to provide that the payments will terminate upon Mary Ellen's death. *Nunc pro tunc* orders correct clerical errors in written orders to conform them to the court's actual judgment; *nunc pro tunc* orders cannot be used to alter the court's judgment. *In re Marriage of Breslow*, 306 Ill. App. 3d 41, 50 (1999). Contrary to Carmen's allegation that the settlement agreement "inadvertently" fails to state that the payments will end upon Mary Ellen's death, the agreement specifically provides that, upon her death, any remaining payments will be deposited into a trust fund to benefit the parties' children. We therefore agree with Mary Ellen that Carmen sought to amend the judgment under section 2—1401.

Section 2—1401 allows a party to challenge a final judgment more than 30 days after its entry by bringing to the court's attention issues of fact outside the record which, if known when the judgment was entered, would have affected the judgment. *Clay v. Huntley*, 338 Ill. App. 3d 68, 74 (2003). A section 2—1401 petition may not be brought more than two years after the judgment's entry. In computing this two-year period, time during which the petitioner was under legal disability or duress, or the ground for relief was fraudulently concealed, is not included. 735 ILCS 5/2—1401(c) (West 2002); see *People v. Pinkonsly*, 207 Ill. 2d 555, 562 (2003). Here, the judgment was entered on April 6, 1995, and Carmen did not bring the action until September 4, 2002. Carmen maintains that the limitations period should be tolled because Mary Ellen fraudulently concealed the fact that she had not reported the payments as income on her 2000 income tax return. However, this alleged fraudulent concealment occurred long after the two-year limitations period had already expired. Accordingly, we hold that the trial court did not err in dismissing Carmen's first claim as untimely.

■ Carmen argues that, even if the trial court correctly dismissed his first claim, his remaining claims do not involve section 2—1401, because they sought to enforce the judgment rather than modify it. Carmen's second claim sought a "reimbursement" for the money Mary Ellen saved by not paying taxes on the payments in 2000. Carmen maintains that he is entitled to this money because Mary Ellen breached the settlement agreement, which, according to Carmen,

clearly provides that the payments are maintenance and that Mary Ellen is required to pay taxes on them. He alternatively contends that the agreement is ambiguous as to whether the payments are maintenance or a property settlement, and that the case should be remanded so that the trial court can consider extrinsic evidence. Mary Ellen argues that the agreement clearly shows that the payments are a property settlement and, therefore, are not income for tax purposes.

The interpretation of a marital settlement agreement is a matter of contract construction, and the court should ascertain and give effect to the parties' intent. The best indication of that intent is the contract's language. When a settlement agreement's language is ambiguous, the trial court should consider parol evidence to determine the parties' intent. *In re Marriage of Carrier*, 332 Ill. App. 3d 654, 658 (2002). In this case, the agreement is ambiguous as to whether the payments are a property settlement or maintenance. The following provisions support a property settlement interpretation. The payments are listed in paragraph six under the heading, "LUMP SUM SETTLEMENT IN LIEU OF PROPERTY," and the paragraph states that Mary Ellen was accepting the payments as such. Paragraph eight states that Carmen was to retain his $343,000 interest in a company, "free and clear of any interest on the part of MARY ELLEN, except as otherwise provided for in Paragraph 6 hereof."

On the other hand, the agreement also contains language supporting an interpretation that the payments are maintenance. Paragraph seven of the agreement, entitled *"WAIVER OF MAINTENANCE,"* states that the parties waived all maintenance "[e]xcept as otherwise provided for in Paragraph 6." Paragraph six states that the payments are deductible by Carmen and taxable to Mary Ellen, indicating that the parties wanted the tax treatment available for maintenance payments. See 26 U.S.C. §§ 71, 215 (2000); *In re Marriage of Marquardt*, 110 Ill. App. 3d 271, 277-78 (1982). Additionally, at the prove up, Mary Ellen replied in the affirmative when the trial court asked if she understood that "maintenance" would be as provided in the settlement agreement, and Mary Ellen's attorney also referred to the payments as maintenance.

However, despite the ambiguity, Carmen would not be entitled to damages under either interpretation. Property settlements are nontaxable and nondeductible. See 26 U.S.C. §§ 71, 215 (2000); *Hoover v. Commissioner of Internal Revenue*, 102 F.3d 842, 845-46 (6th Cir. 1996). While maintenance payments are generally income to the recipient (26 U.S.C. § 71(a) (2000)) and deductible by the payer (26 U.S.C. § 215 (2000)), Carmen's payments would not qualify for such tax treatment because the agreement provides that the payments would

continue after Mary Ellen's death. See 26 U.S.C. § 71(b)(1)(D) (2000). That the parties may have originally been mistaken about the tax consequences of the payments does not defeat this analysis. See *In re Marriage of Steinberg*, 302 Ill. App. 3d 845, 857 (1999) (where parties to a contract against public policy are equally at fault, a court will not aid either party, but will leave both parties where it finds them); *Aydt v. De Anza Santa Cruz Mobile Estates*, 763 F. Supp. 970, 974 (N.D. Ill. 1991) (parties' intent cannot make an illegal provision legal or binding). Mary Ellen complied with the "applicable provisions of the Internal Revenue Code" by not including the payments as income on her 2000 tax return and, therefore, did not breach the settlement agreement.

Carmen alternatively argues that he is entitled to Mary Ellen's tax savings because she was unjustly enriched. However, the doctrine of unjust enrichment is based on implied contract and does not apply where, as in this case, there is a specific contract governing the relationship of the parties. *Nesby v. Country Mutual Insurance Co.*, 346 Ill. App. 3d 564, 567 (2004). While a claim for unjust enrichment may also be made in tort (*Peddinghaus v. Peddinghaus*, 295 Ill. App. 3d 943, 949 (1998)), Carmen's petition did not allege such a cause of action. See 735 ILCS 5/2—603 (West 2002) (pleading must state each cause of action in a separate count). Furthermore, unjust enrichment occurs when one party has unjustly retained a benefit to the other party's detriment, and the retention of the benefit violates fundamental principles of justice, equity, and good conscience. *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 160 (1989). Mary Ellen did not unjustly retain a benefit because, as discussed, she complied with the relevant IRS laws. Carmen also did not suffer a detriment; he could not deduct the payments even if Mary Ellen had paid taxes on them, because they did not qualify as maintenance under federal law. See 26 U.S.C. §§ 71, 215 (2000). We therefore conclude that the trial court did not err in dismissing Carmen's second claim.

Carmen's final claim requested that the trial court hold Mary Ellen in contempt for failing to pay taxes on the payments. Carmen argues that Mary Ellen should be ordered to pay damages through contempt because Carmen would not have been audited by the IRS if she had paid the taxes at issue. Contempt can be either direct or indirect and either criminal or civil. Direct contempt arises from conduct that occurred in the judge's presence, whereas indirect contempt arises from conduct that occurred outside of the judge's presence. *In re Marriage of Ruchala*, 208 Ill. App. 3d 971, 977 (1991). In this case, the alleged contempt was indirect because it took place outside of the trial judge's presence. To obtain a finding of indirect

criminal contempt, the party bringing the action must notify the alleged contemnor of the criminal nature of the proceedings by labeling the pleading as a petition for adjudication of criminal contempt. *In re Marriage of Morse*, 240 Ill. App. 3d 296, 304 (1993). Carmen's pleading contained no such designation, so he could have obtained only a finding of indirect civil contempt. However, a civil contempt proceeding seeks to coerce the contemnor to comply with a court order, and, unlike a criminal contempt proceeding, its goal is not punishment. *Pancotto v. Mayes*, 304 Ill. App. 3d 108, 111 (1999). Mary Ellen cannot be held in civil contempt, because federal law prohibits her from complying with the portion of the settlement agreement requiring her to report the payments as income. Moreover, compensatory damages may not be awarded in a civil contempt proceeding. *Keuper v. Beechen, Dill & Sperling Builders, Inc.*, 301 Ill. App. 3d 667, 669-70 (1998).

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

O'MALLEY, P.J., and GROMETER, J., concur.