# Illinois Official Reports

## Appellate Court

---

*In re Marriage of Lewin*, 2018 IL App (3d) 170175

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF FANNY S. LEWIN, n/k/a LEVITT, Petitioner-Appellant, and PIERRE H. LEWIN, Respondent-Appellee. |
| District & No. | Third District<br>Docket No. 3-17-0175 |
| Filed | May 30, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 14-D-283; the Hon. Kim Lee Kelley, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Jeffrey Alan Ryva, of Quinn, Johnston, Henderson, Pretorius & Cerulo, of Peoria, for appellant.<br><br>Mark D. Walton, of Miller, Hall & Triggs, LLC, of Peoria, for appellee. |
| Panel | JUSTICE O'BRIEN delivered the judgment of the court, with opinion.<br>Presiding Justice Carter and Justice Holdridge concurred in the judgment and opinion. |

**OPINION**

¶ 1 Petitioner Fanny Lewin, n/k/a Levitt, filed a motion to enforce or clarify the marital settlement agreement she entered with respondent Pierre Lewin, which was incorporated in the judgment of dissolution of their marriage. Pierre moved to dismiss, which the trial court granted. Fanny appealed. We affirm.

¶ 2                                   FACTS

¶ 3 Petitioner Fanny Lewin, n/k/a Levitt, and respondent Pierre Lewin were married in July 1997 in Las Vegas, Nevada. They permanently moved to the United States from France in 1998, so Pierre could pursue business opportunities. In 2000 and again in 2004, Pierre was terminated from his employment and the couple faced having to move back to France. In the summer of 2004, a French business colleague, Patrick Peronnet, suggested he and Pierre start a business in Illinois. One condition for the partnership was that Pierre and Fanny execute a postmarital agreement. Patrick sought the agreement because he did not want Fanny involved in the business or to become his business partner. Pierre and Fanny believed the postmarital agreement would protect Fanny and the couple's children from creditors should the new business venture fail. In March 2005, the parties signed a postmarital agreement. The agreement provided, in pertinent part, that Fanny would receive the marital home, her vehicle and the savings account in exchange for waiving maintenance. Pierre would receive the business interests. At the time the agreement was signed, neither Fanny nor Pierre anticipated a divorce.

¶ 4 In May 2014, Fanny filed for dissolution of the marriage. The parties executed a marital settlement agreement (MSA), which provides, in pertinent part:

"11. Respondent shall be allowed to claim for Federal and State Income Tax purposes for 2016 all allowable deductions related to the properties on Brookforest and St. Charles, including the real estate taxes and deducible interest.

* * *

17. Petitioner shall have as and for her own, free and clear of any claim of Respondent the former marital residence at 3100 S. St. Charles Place, Peoria, Illinois and the residence at 908 W. Brookforest, Peoria, Illinois, free and clear of any claim of Respondent. Petitioner shall be responsible for payment of 50% of the line of credit obtained to pay attorney fees in these proceedings. The $50,000 shall be deducted from the $2,000,000.00 settlement resulting in the $1,950,000.00 settlement. Respondent shall be responsible for payment of the entire $100,000.00 line of credit and shall hold Petitioner harmless therefrom.

Respondent shall have the right to live in and occupy the Brookforest residence until such time as he advises the Petitioner that he will move to another location or until Petitioner decides to sell the residence at which time she shall provide him with written notice and allow him 90 days to move from the residence.

In the event Respondent decides to move from the Brookforest residence, he shall provide Petitioner with his Notice of Intent to Move no less than 30 days before the move.

Respondent shall be responsible for payment of all utilities during his period of occupancy of the Brookforest residence. In all other respects, Petitioner shall be responsible for all expenses, debts and obligations arising out of ownership of both properties, including the second installment of the 2015 real estate taxes payable in 2016 and all subsequent years of real estate taxes, home owner's insurance, together with cost of sale, including any closing costs and realtor's commissions."

¶ 5 A judgment of dissolution was entered on August 19, 2016, which incorporated the MSA. The judgment of dissolution included an express integration clause. In November 2016, Fanny filed a motion to enforce or clarify the MSA, arguing that it did not assign the mortgage payments to her and that it was her understanding Pierre would remain responsible for paying the mortgage because he had always made the payments. Fanny requested the court determine that Pierre was responsible for the mortgage on the St. Charles Place residence and require him to reimburse her for mortgage payments she had made and to hold her harmless.

¶ 6 Pierre moved to dismiss pursuant to section 2-615 of the Code of Civil Procedure (Civil Code) (735 ILCS 5/2-615 (West 2016)), alleging Fanny's motion was untimely and failed to state a cause of action. The motion was granted in part and denied in part. The trial court found Fanny's motion requested the clarification or interpretation, not the modification, of the MSA, and rejected Pierre's untimeliness argument. The trial court reviewed the agreement, concluded the MSA was not ambiguous, and refused to apply the provisional admission approach to interpret the agreement. The court granted dismissal under section 2-619(a)(9) (735 ILCS 5/2-619(a)(9) (West 2016)) of the Civil Code. Fanny timely appealed.

¶ 7                                                    ANALYSIS

¶ 8 Fanny presents several arguments that dismissal was improper, including the trial court erred in converting Pierre's section 2-615 motion to dismiss into a section 2-619 motion to dismiss, failed to apply the provisional admission approach to interpret the MSA, did not consider the incompleteness and mistake exceptions to the parol evidence rule, and improperly found the MSA was unambiguous.

¶ 9 A section 2-615 motion to dismiss alleges the complaint fails to state a claim on which relief may be granted. 735 ILCS 5/2-615 (West 2016). The motion presents the question of whether the complaint's allegations, taken as true and viewed in a light most favorable to the nonmovant, are sufficient to state a cause of action on which relief may be granted. *Turner v. Memorial Medical Center*, 233 Ill. 2d 494, 499 (2009). A section 2-619(a)(9) motion accepts the legal sufficiency of the complaint but alleges that plaintiff's claim is barred by other affirmative matter that avoids or defeats the claim. 735 ILCS 5/2-619(a)(9) (West 2016). "An 'affirmative matter' is something in the nature of a defense that negates the cause of action completely." *Martinez v. Cook County Sheriff's Office*, 2017 IL App (3d) 160514, ¶ 15. Our review of a dismissal under either section 2-615 or section 2-619 is *de novo*. *Morrow v. Pappas*, 2017 IL App (3d) 160393, ¶ 42 (section 2-615); *In re Marriage of Morreale*, 351 Ill. App. 3d 238, 240 (2004) (section 2-619).

¶ 10 As a first matter, we address Fanny's argument that the trial court improperly converted Pierre's section 2-615 motion to dismiss to a section 2-619 motion, precluding her from presenting evidence in support of her motion to enforce or clarify. She submits the trial court's conversion shifted the focus on Pierre's motion to dismiss from a legal inquiry to a fact-based dispute and argument on the merits. According to Fanny, she was never given an opportunity

to submit any evidence to show an ambiguity exists in the MSA, which prejudiced her and resulted in the improper dismissal of her motion to enforce or clarify.

¶ 11    The mislabeling of a motion to dismiss is not always fatal and the court will consider the motion where no prejudice resulted from the improper designation. *Wallace v. Smyth*, 203 Ill. 2d 441, 447 (2002). However, where the mislabeling prejudices the nonmoving party, the court's grant of the dismissal must be reversed. *Premier Electrical Construction Co. v. La Salle National Bank*, 115 Ill. App. 3d 638, 642 (1983).

¶ 12    When ruling on a section 2-615 motion to dismiss, a court may not consider affidavits, the results of discovery, or other documentary evidence that was not included with the pleadings as exhibits or other supporting evidence. *Hartmann Realtors v. Biffar*, 2014 IL App (5th) 130543, ¶ 14. The court may not consider evidence outside the pleading when ruling on the motion. *Gilmore v. Stanmar, Inc.*, 261 Ill. App. 3d 651, 654 (1994). In contrast, a section 2-619 motion asserts defects or defenses outside the pleadings that defeat the claims. *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 579 (2006). The court must determine whether the supporting materials establish an affirmative matter defeating the petitioner's claim. *Turner v. 1212 S. Michigan Partnership*, 355 Ill. App. 3d 885, 892 (2005) (citing *Waterford Executive Group, Ltd. v. Clark/Bardes, Inc.*, 261 Ill. App. 3d 338, 343 (1994)). In a ruling on a section 2-615 motion to dismiss, a court may not rely on facts outside the complaint. *Visvardis v. Eric P. Ferleger, P.C.*, 375 Ill. App. 3d 719, 724 (2007).

¶ 13    An integration clause is designed to bind the parties to the terms of their written agreement. *Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill. 2d 457, 464 (1999) (citing *Armstrong Paint & Varnish Works v. Continental Can Co.*, 301 Ill. 102, 106 (1921)). By using an integration clause in a contract, the parties are "explicitly manifesting their intention to protect themselves against misinterpretations which might arise from extrinsic evidence." *Air Safety*, 185 Ill. 2d at 464. Where an integration clause is included in an agreement, the four corners rule applies and extrinsic evidence is not admissible to interpret the agreement. *Eichengreen v. Rollins, Inc.*, 325 Ill. App. 3d 517, 522 (2001). In contrast, the provisional admissibility approach allows the use of extrinsic evidence to aid in interpreting an agreement that is otherwise unambiguous on its face. *Ahsan v. Eagle, Inc.*, 287 Ill. App. 3d 788, 790 (1997). Under that approach, the court first provisionally examines the extrinsic evidence to determine whether there is an ambiguity. *Id.* The provisional admission approach does not apply to contracts with an integration clause. *Air Safety*, 185 Ill. 2d at 464.

¶ 14    Pierre argues that the provisional admission approach is not applicable because the parties' MSA was an integrated statement of settlement of the parties' dissolution issues. The judgment of dissolution, which incorporated the MSA and included an express integration clause, was attached to Pierre's motion to dismiss. The judgment provides that the MSA settles "all questions of property rights, claims against each other, rights of maintenance and all other marital rights arising out of their marriage to each other." The MSA was a fully integrated agreement and intended to be the entire agreement between the parties. Insertion of the integrated clause in the dissolution judgment reflects Fanny and Pierre's intent to bind themselves to their written agreement. The integration clause precluded the use of the provisional admissibility approach, and extrinsic evidence was not admissible to support Fanny's claim that the MSA was ambiguous regarding the mortgage payment. Because Fanny could not present any extrinsic evidence to support her interpretation of the MSA, she could not have been prejudiced by the trial court's treatment of the section 2-615 motion as a section

2-619(a)(9) motion. We find the trial court did not err when it granted Pierre's motion to dismiss.

¶ 15                              CONCLUSION

¶ 16         For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed.

¶ 17         Affirmed.